UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KAELEEN KIRKPATRICK,

            Plaintiff,

v.

TIGARD-TUALATIN SCHOOL DISTRICT, an Oregon Public School District local government, LENICHTKA REED, an individual, and CAROL KINCH, an individual,

            Defendants.

Case No. 3:24-02007-AR

**OPINION AND ORDER**

**ARMISTEAD, United States Magistrate Judge**

     Before the court is plaintiff Kaeleen Kirkpatrick's motion to compel.[1] Kirkpatrick alleges that the Tigard-Tualatin School District (the district), through employees Lenichtka Reed and Carol Kinch (together, defendants), retaliated against her for raising concerns about the district's noncompliance with state and federal disability laws and for fostering a runaway student. She

---

[1] The parties request oral argument. The court, however, does not believe that oral argument would help resolve the pending motion. See LR 7-1(d)(1).

now moves to compel production of the entire personnel files of Reed and Kinch, as well as two nonparties, Gregg Sheldrake and Jamie Voelker. For the reasons described below, Kirkpatrick's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Kirkpatrick's complaint. Kirkpatrick worked as a school psychologist for the district's Student Services in 2024. (Compl. ¶ 2, ECF 1.) In addition to providing counseling, Kirkpatrick regularly conducted threat assessments, prepared Individualized Education Programs (IEPs) and Section 504 plans, and evaluated students in accordance with state and federal disability laws. (Compl. ¶¶ 9-11; Mot. Compel (MTC) at 2, ECF 18.) The following is Kirkpatrick's version of the events preceding her termination.

In early 2023, Kirkpatrick witnessed another employee, Jamie Voelker, go "hands-on" with a student. After Kirkpatrick reported the assault to the district, Voelker agreed to resign at the end of the school year. Voelker allegedly "lashed out" at Kirkpatrick and made several complaints to the district regarding Kirkpatrick's "boundary issues." (MTC at 10.)

Later, in May, Kirkpatrick offered to temporarily foster a runaway student. The student's aunt and uncle, the Tualatin Police, the District, the Oregon Department of Human Services (ODHS) were in favor of the plan. (*See* Compl. ¶¶ 16-21.) Eventually, the student's aunt and uncle granted Kirkpatrick temporary legal guardianship for a period of one year. (*Id.* ¶ 25.)

At the start of the new school year, two issues arose. First, after attempting to enroll the foster student in a different school, Kirkpatrick came under fire from the district's Human Resources Director, defendant Len Reed, for taking the student in at all. (*Id.* ¶¶ 31-32.) Reed, as well as Student Services' director, defendant Carol Kinch, accused Kirkpatrick in a non-

disciplinary letter of having "inappropriate boundaries" with students and creating a potential liability for herself and the district. (*Id.* ¶ 33.) Reed and Kinch made those accusations despite legal documentation reflecting her temporary guardianship of the student and the district and ODHS's approval. (*Id.* ¶ 31-33.)

Around that same time, Kirkpatrick was reassigned to a high school in the district. She immediately observed that the school was not in compliance with federal and state disability laws. Between August 2023 and February 2024, Kirkpatrick repeatedly reported those issues to Kinch. Kirkpatrick raised specific concerns about the failure of another school psychologist, Gregg Sheldrake, to comply with relevant procedures. Kinch eventually hired a part-time psychologist to help bring the district into compliance. (*Id.* ¶¶ 27-30.)

On top of being troubled by her temporary guardianship of a student, Kinch and Reed began to raise other concerns about Kirkpatrick and push for her termination. They perceived Kirkpatrick as "non-collaborative." (*Id.* ¶ 34.) Kinch and Reed repeatedly told Kirkpatrick to quit her job, but she refused. After a "last minute" evaluation in February, Kinch informed Kirkpatrick that her contract would not be renewed. In her letter recommending non-renewal, Kinch described Kirkpatrick as "quick to make judgments about staff, school, and/or district" and raised concerns about her professionalism and ethics. (*Id.* ¶ 37.) Kinch also allegedly told Kirkpatrick that her "critic[ism] of school systems" was in part to blame for her termination. (*Id.* ¶ 36.) Following a contested hearing, the School Board voted in March 2024 to terminate Kirkpatrick, although the vote was not unanimous. (*Id.* ¶ 38.)

Kirkpatrick sued in December 2024. Against all defendants, she alleges violations of her due process and first amendment rights under 42 U.S.C. § 1983. Against the district, she brings a

Page 3 – OPINION AND ORDER
*Kirkpatrick v. Tigard-Tualatin School District, et al.*, 3:24-cv-02007-AR

claim of wrongful discharge, as well as retaliation claims under Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and state law. Kirkpatrick now moves the compel the entire personnel files of defendants Reed and Kinch and of nonparties, Sheldrake and Voelker.[2] Defendants object on the ground that the requested files fall outside the permitted scope of discovery.

## LEGAL STANDARD

Rule 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." For the purposes of discovery, relevance is "defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). Yet relevance is not boundless. The 2015 amendment to Rule 26(b) removed the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery and, in practice, often swallowed any existing limitations in the rule. FED. R. CIV. P. 26(b)(1) advisory committee's notes (2015 amendment).

The 2015 amendment also "restor[ed] proportionality as an express component of the scope of discovery." *Id.* When considering the relevance and proportionality of a party's discovery request, the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

---

[2]    The parties were advised of this court's practice to resolve discovery disputes informally during the Rule 16 conference held on March 12, 2025. (ECF 15.) Kirkpatrick did not follow that procedure before moving to compel. Any future discovery disputes should be addressed in accordance with the procedure described in ECF 15.

proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Rule 26 provides district courts with broad discretion to limit discovery that is irrelevant to any party's claim or defense or disproportional to the needs of the case.

If a party fails to produce requested documents, the party seeking discovery may move for an order compelling production. FED. R. CIV. P. 37(a)(3)(B). Although the party seeking to compel discovery has the burden of establishing that its requests are relevant and proportional, the party opposing discovery has the twin burden of showing that discovery should not be allowed and clarifying, explaining, and supporting its objections with competent evidence. *Sarnowski v. Peters*, 2:16-cv-00176-SU, 2017 WL 4467542, *2 (D. Or. Oct. 6, 2017).

## DISCUSSION

Kirkpatrick has requested the complete personnel files of defendants Kinch and Reed and nonparties Sheldrake and Voelker. That request is subject to a single limitation: the exclusion of medical and financial information. Kirkpatrick also seeks production of any evaluation file, disciplinary file, file containing investigation documents, disciplinary documents, or performance counseling documents regarding those individuals, if kept separately from their personnel files. (MTC at 4.) Defendants object to those requests on the grounds that they are overly broad, not reasonably calculated to the lead to the discovery of admissible evidence, and infringe on the employees' privacy rights. (Resp. at 2, ECF 21.)

Discovery rules are construed liberally in employment discrimination lawsuits. *Lauer v. Longevity Med. Clinic PLLC*, C13-0860-JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014). In general, the personnel files of individuals alleged to have "played an important role in the employment decision or incident that gave rise to the lawsuit" are relevant. *Grigsby v. Young*

*Men's Christian Ass'n of Greater Seattle*, 2:22-CV-01243, 2023 WL 3761945, at *3 (W.D. Wash. June 1, 2023) (citing *Karrani v. JetBlue Airways Corp.*, C18-1510 RSM, 2019 WL 2269817, at *3 (W.D. Wash. May 28, 2019)); *see also Lauer*, 2014 WL 5471983 at *4 ("[T]here is strong tradition among federal district courts recognizing the relevancy and thus discoverability of personnel files in employment discrimination suits."); *Weiss v. Safeway, Inc.*, 189 F.R.D. 442 (D. Or. 1999) (allowing discovery of supervisor's personnel records with exception of records relating to retirement benefits). That principle applies to parties and nonparties alike. *See Lauer*, 2014 WL 5471983 at *3-4.

      That is not to say that a motion compelling an entire personnel file should always be granted. *See Lamb v. Kaiser Found. Health Plan Nw.*, 3:14-CV-01508-MO, 2015 WL 13858457, at *1 (D. Or. Apr. 3, 2015) (observing that the case law "do[es] not support so broad a rule"). Even in the employment discrimination context, discovery must still be proportional. FED. R. CIV. P. 26(b)(1); *see also Bush v. Pioneer Hum. Servs.*, C09-518 RSM, 2010 WL 11682489, at *4 (W.D. Wash. Jan. 8, 2010) (noting that, where there is no need for comparator evidence, much of an employee's personnel file will not be relevant). The party seeking to force production must put forth a "plausible theory" as to why the entire personnel file falls within the scope of discovery defined by Rule 26. *Lamb*, 2015 WL 13858457 at *1. Reasonable arguments that impeachment evidence or indirect evidence of pretext, motive, or bias exists in the file may justify compelling production. *See*, *e.g.*, *Lauer*, 2014 WL 5471983 at *4, 6 (pretext, bias); *Kellgren v. Petco Animal Supplies, Inc.*, 13CV0644-L(KSC), 2015 WL 11237636, at *4-5 (S.D. Cal. Apr. 10, 2015) (credibility); *Love v. Permanente Med. Grp.*, C-12-05679 DMR, 2013 WL 4428806, at *4 (N.D. Cal. Aug. 15, 2013) (motive).

Page 6 – OPINION AND ORDER
*Kirkpatrick v. Tigard-Tualatin School District, et al.*, 3:24-cv-02007-AR

Further, the opposing party may raise valid privacy objections. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests."). The asserted privacy right must then be weighed against the relevancy of the requested file, as well as the moving party's need for it. *See id.* (collecting circuit court cases). To bring the needs of the case and a party's reasonable expectations of privacy into balance, the court may deny or narrow a discovery request. *Equal Emp. Opportunity Comm'n v. CTI, Inc.*, CV-13-1279-TUC-DCB, 2014 WL 12639916, at *1 (D. Ariz. Mar. 28, 2014). That said, a party's privacy interest is afforded less weight where there is a stipulated protective order in place preventing disclosure of confidential material to the public. *Bush*, 2010 WL 11682489 at *4.

With that framework in mind, the court turns to Kirkpatrick's requests.

**A.**     ***Kinch***

Kirkpatrick argues that Kinch's personnel file is relevant on three grounds: (1) Kinch is a named defendant "directly involved" in Kirkpatrick's allegedly unlawful termination, meaning her credibility is at issue by default; (2) any records that reflect Kinch was disciplined or counseled for permitting the violation of state and federal disability laws to persist would show notice and a basis for retaliatory intent; and (3) the entire file is relevant because a lack of discipline would reflect a "laissez faire" attitude on the district's part. Defendants raise two objections. For one, although they concede that some personnel files may be relevant, they assert that Kirkpatrick has failed to show how the entire file is relevant. And for two, defendants object to the request's lack of a limiting timeframe, especially because Kinch has worked for the district for 26 years.

Page 7 – OPINION AND ORDER
*Kirkpatrick v. Tigard-Tualatin School District, et al.*, 3:24-cv-02007-AR

Kirkpatrick has not put forth a plausible theory as to why disclosure of Kinch's entire personnel file is relevant and proportional to the needs of the case. Put another way, she has not carried her burden. The court agrees that any evaluations, disciplinary records, performance counseling documents, and investigation files, including allegations of misconduct, are relevant to show pretext, bias, or motive, or go to Kinch's credibility. The court also agrees that a lack of discipline regarding the district's noncompliance with disability laws may be relevant. But disclosure of Kinch's entire personnel file is not necessary to show a lack of discipline when production of all documents that fall into the above categories would achieve the same result. Kirkpatrick has not adequately explained how other personnel files, such as transcripts, letters of recommendation, or employment contracts, are relevant to her claims. *See Hipschman v. County of San Diego*, 738 F. Supp. 3d 1332, 1343 (S.D. Cal. 2024) (denying motion to compel entire personnel file where relevance was not established). A "narrower disclosure[] will suffice." *Hunter v. Coca-Cola Co.*, C14-609RAJ, 2015 WL 3874945, at *4 (W.D. Wash. June 23, 2015).

Not only is Kirkpatrick's request substantively overbroad, its timeframe is overbroad as well. Kirkpatrick has not shown why she needs 26 years of records. The burden of producing records spanning nearly three decades significantly outweighs any probative value that 15-year-old records might hold. *See Rodriguez v. Knight*, 2:19-CV-02552-DJC-DB, 2023 WL 3570612, at *3 (E.D. Cal. May 19, 2023) ("[C]ourts must consider the proportional benefit of the discovery requested to the burden imposed, including consideration of the remoteness of discovery."); *Est. of Najera-Aguirre v. County of Riverside*, EDCV18762DMGSPX, 2019 WL 6898944, at *3 (C.D. Cal. Aug. 22, 2019) (personnel file listing misconduct from 20 years before the incident was too remote in time to be discoverable).

Page 8 – OPINION AND ORDER
*Kirkpatrick v. Tigard-Tualatin School District, et al.*, 3:24-cv-02007-AR

Although 26 years is too broad, limiting discovery to the two years Kirkpatrick was employed by the district is too narrow, as evidence predating her employment may be relevant to proving intent or pretext. *See Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995). Accordingly, the court concludes that limiting discovery to four years before Kirkpatrick's employment and up to one year after her termination is reasonable and not overly burdensome. *See Walech v. Target Corp.*, C11-254 RAJ, 2012 WL 1068068, at *9 (W.D. Wash. Mar. 28, 2012) (limiting discovery in employment discrimination case to seven years); *Rodriguez*, 2023 WL 3570612 at *3 (five years); *Hipschman*, 738 F. Supp. 3d at 1343 (six years).

**B.**     *Reed*

Kirkpatrick puts forth similar arguments regarding disclosure of defendant Reed's personnel file; defendants lodge similar objections. Again, Kirkpatrick only establishes relevance for evaluations, disciplinary records, performance documents, and investigation files. Kirkpatrick has failed to carry her burden regarding other documents found in Reed's personnel file. Kirkpatrick's request also lacks a limiting timeframe and again fails to explain why an such an expansive scope of discovery is proportional to the needs of the case. Thus, any compelled documents from Reed's personnel file are subject to the same period described above: four years before Kirkpatrick's employment and up to one year after her termination.

**C.**     *Sheldrake*

Kirkpatrick also seeks the entire personnel file of nonparty Sheldrake. Kirkpatrick asserts that any records reflecting Sheldrake's performance deficiencies, including any formal counseling by Kinch regarding those deficiencies, show defendants' "state of mind and retaliatory intent" and are therefore relevant. (MTC at 9.) To support her request, Kirkpatrick

Page 9 – OPINION AND ORDER
*Kirkpatrick v. Tigard-Tualatin School District, et al.*, 3:24-cv-02007-AR

argues that those records could show that defendants had knowledge (and notice) of the district's noncompliance, acted with deliberate indifference, or had a motive to retaliate. In response, defendants argue that Kirkpatrick's request is not proportional, nor will Sheldrake's records resolve any issues in the case. Defendants ask that any order compelling production of Sheldrake's personnel file be limited to documents that relate to Kinch counseling Sheldrake.

As with Kinch and Reed, Kirkpatrick has not put forth a plausible theory as to why Sheldrake's entire personnel file is proportional. For one, she does not show how Sheldrake "played an important role in the employment decision or incident that gave rise to the lawsuit." *See Grigsby*, 2023 WL 3761945 at *3 (declining to narrow a discovery request on proportionality grounds considering the "prominent role" the nonparties played in the plaintiff's allegations). As defendants point out, Sheldrake resigned before Kirkpatrick raised her concerns about his performance. For two, the court agrees with defendants that Kirkpatrick's need for Sheldrake's entire personnel file is far outweighed by his privacy interests. (Resp. at 5-6.)

That said, records relating to Sheldrake's performance deficiencies and noncompliance with federal and state disability laws are relevant. The parties previously stipulated to a protective order governing the disclosure of confidential information, including that of non-parties. (ECF 14.) The court is confident that the privacy protections afforded by the protective order will be sufficient to shield Sheldrake from public disclosure of any produced personnel files. Defendants must produce any records that concern Sheldrake's compliance or noncompliance with the relevant disability laws, including any performance counseling that Kinch provided to Sheldrake. *See Bush*, 2010 WL 11682489 at *4 (observing that, although protective orders "substantially lessen[] the weight of any privacy claim," they do not give a

Page 10 – OPINION AND ORDER
*Kirkpatrick v. Tigard-Tualatin School District, et al.*, 3:24-cv-02007-AR

party the "right to rifle through private files if they are not relevant"). Finding the request sufficiently narrowed, the court declines to limit their time period.

**D.**     *Voelker*

Finally, Kirkpatrick requests the entire personnel file of nonparty Voelker. After Kirkpatrick reported Voelker for going "hands-on" with a student, Voelker allegedly "lashed out" at Kirkpatrick and accused her of having "boundary issues." (MTC at 10.) Kirkpatrick asserts that Kinch and Reed "relied," at least in part, on Voelker's complaints that Kirkpatrick had boundary issues in making their termination decision. (*Id.*) Thus, in Kirkpatrick's view, any complaints made about Kirkpatrick in Voelker's file could support a showing of bias or pretext, or alternatively, defendants' state of mind.

In response, defendants first note that any complaints made by Voelker against Kirkpatrick will be found in Kirkpatrick's file, not Voelker's. Further, they argue that Kirkpatrick's request for the entire personnel file is not proportional because any discoverable bias begins with the incident reported by Kirkpatrick and ends with the district's subsequent investigation and discipline of Voelker. (Resp. at 6.)

The court agrees that personnel files of Voelker's falling outside of that substantive or temporal scope are not relevant. Again, Kirkpatrick has not carried her burden and demonstrated why Voelker's entire personnel file is discoverable. Nevertheless, it is proportional and relevant for defendants to produce any personnel files of Voelker's that stem from Kirkpatrick's report, including any files related to the district's subsequent investigation, counseling, or discipline of Voelker. And if there are any personnel files that fall outside that scope but relate to Kirkpatrick

regardless (such as a complaint about Kirkpatrick unrelated to her report), defendants must produce that as well.

## CONCLUSION

For the above reasons, Kirkpatrick's motion to compel (ECF 18) is GRANTED in part and DENIED in part. Subject to the parties' stipulated protective order and in accordance with this order, defendants must produce the following:

- Any evaluation files, disciplinary files, or files containing investigation documents, disciplinary documents, or performance counseling documents from May 2018 to March 2025 concerning Kinch or Reed. That includes any relevant documents kept separately from their personnel files.

- Any records relating to Sheldrake's noncompliance with federal and state disability laws, including records kept separately from his personnel file.

- Any personnel files of Voelker's that stem from Kirkpatrick's report, including any files related to the district's subsequent investigation, counseling, or discipline of Voelker.

- Any personnel files of Voelker's that concern Kirkpatrick, regardless of whether the file stems from Kirkpatrick's report.

October 22, 2025

_____
JEFF ARMISTEAD
United States Magistrate Judge